

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2004

# Cagas v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1049

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Cagas v. Atty Gen USA" (2004). *2004 Decisions.* Paper 1008.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1008

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1049

NORVEL CAGAS,
Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA No. A16-057-688)

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2004

Before: SLOVITER, RENDELL and ALDISERT, Circuit Judges.

(Filed: February 11, 2004)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Norvel Cagas, a citizen of the Phillippines, petitions for review of a final order of

the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's denial of

his applications for asylum and withholding of removal. We have jurisdiction under 8 U.S.C. § 1252(a). We will deny the petition for review.

Because we write exclusively for the benefit of the parties, we recite only the material facts necessary to decide the issues before us. Cagas was born in the Phillippines, and lived, worked, and went to college there. He was appointed by his uncle, the mayor of Oroquieta City, as a councilor, a political position similar to that of a state representative. He met with then-Governor Abalos, who asked him if he would "kill for him" in order to achieve his political goals. In 1987, after Abalos, a Christian, lost the Governor's election to Dimaporo, a Muslim, Cagas began working for Dimaporo. At some point in time, Cagas took a job as a seaman on a ship. While working on the ship, he claims to have received a letter from his wife stating that both the Christian and Muslim political parties wanted to kill him because of his association with both sides. As a result, he resigned as councilor and, when he was not on his ship, spent his time in the Phillippines hiding. In 1992, after receiving several letters from his wife stating that other political activists had been murdered in the Phillippines, he left his ship when it sailed to Louisiana and entered the United States.[1] On May 5, 1993, Cagas filed an application for asylum. In early 1998, the Immigration and Naturalization Service issued a Notice to Appear charging removability under INA § 237(a)(1)(B). After a hearing, the

---

[1]Cagas's wife has also left the Phillippines, but he is uncertain as to her whereabouts.

Immigration Judge ("IJ") found Cagas removable and denied his applications for asylum and withholding of removal.

The IJ based his decision on Cagas's failure to provide any evidence of political involvement with any specific political organization, and the overall conditions in the Phillippines, which did not "support the notion that there is this kind of random political persecution and killing going on" or provide background for Cagas's story "to make some sense and to be believable." The IJ stated that Cagas's inarticulate testimony at the hearing was confusing and difficult to understand, and was insufficient by itself to support his claims for asylum and withholding. The IJ did not allow Cagas's friend, Telsor Gomez, to testify as to the general political conditions in the Phillippines. The IJ granted voluntary departure for sixty days.

The BIA affirmed the IJ's decision on December 13, 2002. The BIA concluded that, even though Cagas had submitted an affidavit, the IJ's inability to understand his testimony at the hearing was sufficient to deny asylum, stating that "an applicant's testimony is essential to an asylum proceeding and that he cannot rely on his written statements alone to meet his burden of proof." The BIA also found that there was no prejudice to Cagas with respect to the IJ's exclusion of Gomez's testimony because an affidavit provided by Gomez demonstrated that Gomez had no direct knowledge of Cagas's specific political situation in the Phillippines. Cagas filed a timely appeal of the BIA's decision on January 6, 2003.

This petition for review raises three issues: 1) whether the IJ's decision not to allow Gomez to testify at the hearing violated Cagas's due process rights; 2) whether the BIA erred in denying Cagas's claims for asylum and withholding of removal; and 3) whether Cagas should have been granted protection under Article 3 of the United Nations' Convention Against Torture.

Cagas first contends that the IJ's refusal to allow Gomez to testify at his removal hearing violated his due process right to a meaningful opportunity to be heard at his removal proceedings. We review this due process claim *de novo*. DiPeppe v. Quarantillo, 337 F.3d 326, 332 (3d. Cir. 2003). Although it is not constitutionally required, aliens are entitled to due process during removal proceedings. Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d. Cir. 2001). This due process requirement consists of affording the aliens "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. (quoting Matthews v. Eldridge, 424 U.S. 319, 333 (1976)). To fulfill this requirement, an alien is entitled to three components: 1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; 2) the right to make arguments on his or her own behalf and 3) the right to an individualized determination of his [or her] interests. Id.

Furthermore, in order to sustain a due process claim, an alien alleging a denial of a due process right must also show that the denial of the right resulted in "substantial prejudice." See Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997). To show substantial

4

prejudice, a petitioner must make a "prima facie case" for withholding of removal or asylum. Id. at 145. In other words, the Petitioner must "produce some concrete evidence" to show that the alleged due process violation "had the potential for affecting" the outcome of his case. Kuciemba v. INS, 92 F.3d 496, 501 (7th Cir. 1996) (internal quotations and citations omitted). Thus, it is not a due process violation for an IJ to exclude "irrelevant evidence" from the hearing. Kerciku v. INS, 314 F.3d 913, 918 (7th Cir. 2003). Moreover, denying an alien the opportunity to present corroborating evidence during his hearing is only a violation of the alien's due process right when the testimony would serve to corroborate the alien's specific experiences. Podio v. INS, 153 F.3d 506, 507-08 (7th Cir. 1998) (holding that failure to allow family members to corroborate alien's specific and individual past persecution is a due process violation).

Here, Gomez's affidavit indicates that he had only general knowledge of the current situation in the Phillippines. There is no suggestion that Gomez had specific knowledge of Cagas's particular situation. In the affidavit, Gomez discussed the evolution of the Phillippines' political situation in such general terms as "the good years," "those who crossed religious lines," "these men," and "that area from which we come." He also stated that this tense political situation is "not rare, but very common." Indeed, there are only a few instances in which Gomez's affidavit even mentions Cagas by name – and all of those are instances in which Gomez asserts that Cagas will become one of "these men" entangled in the tense political situation in the Phillippines. The affidavit

5

does not make any mention of Cagas's specific actions or circumstances that would lead to his having a well-founded fear of persecution.

As a result, Cagas has not made the requisite showing that Gomez's testimony "had the potential for affecting" the outcome of the removal proceedings. Kuciemba, 92 F.3d at 501. Because Gomez's affidavit only provided a general account of the political atmosphere as a whole in the Phillippines and did not attest to any fact that might show why Cagas in particular had a well-founded fear of persecution, the affidavit was "irrelevant evidence." Kerciku, 314 F.3d at 918. Therefore, the IJ's refusal to allow Gomez to testify did not violate Petitioner's due process rights. Id.; see also Podio, 153 F.3d at 507-08.

Turning to the issue of whether the BIA erred in denying Cagas's claims for asylum and withholding of removal, we note that where the BIA conducts a *de novo* review of an IJ's decision, we review the BIA's decision as the final agency determination for substantial evidence. Abdulai v. Ashcroft, 239 F.3d 542, 548 (3d. Cir. 2001). Pursuant to Section 242(b)(4)(B) of the Immigration and Naturalization Act ("INA"), the BIA's findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Our court has stated that this statute "codifies the language the Supreme Court used in [INS v. Elias-Zacarias, 502 U.S. 478 (1992)] to describe the substantial evidence standard in immigration cases." Sevoian v. Ashcroft, 290 F.3d 166, 171 (3d Cir. 2002). This standard requires us to accept an

agency's findings of fact as if they are "supported by reasonable, substantial and probative evidence in the record as a whole." Elias-Zacarias, 502 U.S. at 481.

The Attorney General may grant a person asylum if he meets the definition of a refugee. 8 U.S.C. § 1158(b). A "refugee" is defined as a person who is outside his or her country of nationality and "is unable or unwilling return to , and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The petitioner has the burden of proving that he meets the definition of "refugee." 8 C.F.R. § 208.13(a).

The Attorney General may not remove a person to a country where that person's "life or freedom would be threatened" as a result of his or her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for withholding from removal, the Petitioner must "establish a clear probability of persecution to avoid [removal]." INS v. Stevic, 467 U.S. 407, 412 (1984). This court has interpreted that standard to require that the Petitioner demonstrate that "it is more likely than not that he will face persecution if he is deported." Li Wu Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001); see also 8 C.F.R. § 208.16(b) (2003).[2]

---

[2]Because the standard for withholding from removal is a stricter standard than the standard for asylum, a petitioner who does not meet the asylum standard of "well-founded fear of persecution" necessarily also does not meet the "clear probability" standard for withholding from removal. INS v. Cardoza-Fonesca, 480 U.S. 421, 449 (1987).

After reviewing the administrative record, we find that Petitioner has not met his burden of proving that "any reasonable adjudicator would be compelled to conclude" that the BIA erred in upholding the IJ's denial of Petitioner's applications for asylum and withholding of removal. 8 U.S.C. § 1252(b)(4)(B). To meet his burden of proof during an asylum proceeding, an applicant for asylum must testify orally and may not rely solely on written statements. Matter of Fefe, 20 I&N Dec. 116 (BIA 1989). In some cases, the testimony of a person who applies for asylum may, without corroborative evidence, be sufficient to prove a well-founded fear of persecution where the testimony is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." Matter of Mogharrabi, 19 I&N Dec. 439, 445 (BIA 1987). Here, however, the testimony was unclear and, at times, inconsistent, and therefore was not sufficient to support a claim of persecution necessary to sustain a claim of asylum.

For example, Cagas testified that he began working on a ship in 1985 and then left this job in 1986, but then subsequently testified that he did not leave his job on the ship until 1992 when he entered the United States. Likewise, he testified that six of his friends had been killed as a result of their political associations, yet he was not able to name any of those friends by name. He initially testified that Abalos, a Christian, wanted to kill him because he was working for Dimaporo, a Muslim, but then testified that both sides wanted to kill him and he did not know why.

Petitioner also testified that he knew that the situation in the Phillippines had not

8

changed during the six years that he had not been in the country, yet he was unable to articulate reasons why he knew. He also testified that neither the Christians nor the Muslims had ever "mistreated" him in any way while he lived in the Phillippines. Further, a State Department Report indicates that there has been a decline in politically motivated killings and that the Filipino government has been successful in its efforts to improve the country's political conditions. For all of the above reasons, the BIA's decision to deny asylum and withholding of removal was supported by substantial evidence, and a reasonable adjudicator would not have been compelled to the contrary.

Finally, we do not have jurisdiction to review Cagas's claim for relief under the United Nations' Convention Against Torture. Pursuant to Section 242(d)(1) of the Immigration and Naturalization Act, this court "may remove a final order of removal only if...the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). In order for a claim to be subject to judicial review, "an alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim." Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d. Cir. 2003). Here, Cagas has asserted for the first time on appeal his claim for protection under the Convention. Because he did not raise this claim in his asylum hearing before the IJ or his appeal to the BIA, he has not exhausted the administrative remedies available to him. Therefore, this court has no jurisdiction to review this claim.

Accordingly, we will deny the petition for review.