

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2005

# Li v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2824

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Li v. Atty Gen USA" (2005). *2005 Decisions.* Paper 791.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/791

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2824
_____

JIAN YU LI,

Petitioner

v.

Attorney General of the
United States; Secretary of
Department of Homeland Security,

Respondents
_____

On Petition for review of an Order of the Board of Immigration Appeals
INS No. A 96 018 173
_____

Submitted Under Third Circuit LAR 34.1(a) July 12, 2005

Before: SLOVITER, McKEE, and ROSENN, Circuit Judges.

(Filed: July 22, 2005)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

Jian Yu Li, a citizen of China, petitions for review of the determination of the

Board of Immigration Appeals ("BIA") denying his application for asylum, withholding

of removal, and protection under the Convention Against Torture ("CAT"). The BIA affirmed without opinion the finding of the Immigration Judge ("IJ") that Li failed to establish past persecution, a well-founded fear of persecution, or a likelihood of torture in China. The IJ determined that Li lacked credibility because of inconsistencies between his testimony, his statement provided at the airport upon entry to the United States, his asylum application, and an uncorroborated affidavit provided by his father. The IJ concluded that Li's lack of credibility therefore precluded relief under both the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, and the CAT.

Li appealed to this Court, arguing that the IJ's credibility finding was erroneous because it resulted from a misinterpretation of the record. Li asserts that any inconsistencies are reconcilable and, in addition, the IJ relied too heavily on Li's airport statement, his asylum application, and his father's uncorroborated affidavit in concluding that inconsistencies existed. Finally, Li challenges the rejection of his CAT claim, asserting that the BIA and IJ were required to consider his proffered evidence of conditions in China before concluding that he was not entitled to withholding of removal pursuant to the CAT. We have jurisdiction under 8 U.S.C. § 1252. Because the IJ's adverse credibility determination is supported by substantial evidence, we affirm the denial of asylum and withholding of removal. However, because the IJ ignored the record evidence that suggests Li is more likely than not to be tortured if returned to China, we will vacate the removal order and remand for proper consideration of Li's CAT claim.

2

I

Li, an eighteen-year old citizen of the People's Republic of China, was detained

on January 19, 2003, at Miami International Airport after trying to enter the United States

without documentation.[1]  In his statement to immigration officials at the airport, Li

declared that he left China to avoid being arrested by police for allegedly being involved

with drug-related gangs.  However, Li testified at his removal proceedings that he fled to

the United States because he was arrested by Chinese police for "ha[ving] hurt people

before[.]"  Different still, Li subsequently testified that he was arrested for participating in

the outlawed social movement Falun Gong.[2]  Because Li's primary claim for asylum is

predicated upon his adherence to Falun Gong, it is to this rationale that we direct our

attention.

Li testified that he became an adherent of Falun Gong after a teacher from his

middle school gave him a pamphlet describing the tenets of the movement.  Li attended

---

[1]Li testified at his asylum hearing that he "lost" his passport on the airplane.  However, in his airport interview Li admitted to destroying the passport onboard.

[2]Falun Gong is a movement in the People's Republic of China that "blends aspects of Taoism, Buddhism, and the meditation techniques of Qigong (a traditional martial art) with the teachings of Li Hongzhi."  Gao v. Ashcroft, 299 F.3d 266, 267-68 (3d Cir. 2002) (citing U.S. Dep't of State, Human Rights Report for 1999, China, February 25, 2000, available at http://www.state.gov/www/global/human--rights/1999--hrp– report/ china.html).  In 1999, the Chinese government banned Falun Gong as a "threat to social and political stability" and began a nationwide crackdown against the movement. Amnesty International Report, People's Republic of China: The Crackdown on Falun Gong and Other So-Called "Heretical Organizations," at http://www.amnestyusa.org/countries/china/document.do?id=881234C280E6469B802568 B00057ED13 (last visited June 28, 2005).

secret Falun Gong meetings at his teacher's home twice a week for approximately one year. During this time, Li was given numerous Falun Gong texts and a Falun Gong DVD depicting the Chinese Government's persecution of Falun Gong followers at Tianemen Square. On December 31, 2002, Li witnessed a Chinese policeman arrest the teacher and saw another policeman confiscate a box of materials bearing the Falun Gong insignia. Out of fear that the police would discover he was an adherent and arrest him, Li fled home to destroy all of his Falun Gong material. Li testified that he destroyed the Falun Gong materials while his parents were at work.

Li stated that upon destroying the Falun Gong material he left for his Aunt's house. Once at his Aunt's house, Li received a phone call from his father advising him to flee to Guangzhao because the police had come to his parents residence to arrest him for his involvement with Falun Gong. At that time, the police also searched the residence and confiscated some remaining Falun Gong materials that Li had not destroyed. After the police left, Li's father traveled to Guangzhao with a passport and an airline ticket for Li and instructed him to flee to the United States for his own safety. After a three-day flight, Li arrived at Miami International Airport hungry and tired. Upon being detained at the airport, Li requested that he be able to rest and eat before answering immigration questions, but his request was denied.

The IJ noted that Li's testimony was internally inconsistent and conflicted with his asylum application, his airport statement, and his father's uncorroborated

4

affidavit.[3]  The IJ concluded that these inconsistencies stripped Li of credibility, which precluded him from obtaining relief under both the INA and CAT.   The BIA affirmed the IJ's decision without opinion.  On review, Li challenges the IJ's adverse credibility determination and asserts that his CAT claim was inadequately addressed.

## II

To qualify for asylum, an alien must demonstrate that he is a "refugee," which means proving he is unable or unwilling to return to his country of nationality because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1158(b)(1); 1101(a)(42)(A).  To demonstrate a well-founded fear of future prosecution, petitioner must show he has a genuine fear of persecution which would be shared by a reasonable person in his circumstances upon return to China.  Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  This showing can be made by the production

---

[3]An affidavit had been prepared based on phone conversations with Li's father and a copy was forwarded to him in China for signature.  However, the affidavit was never signed because it was intercepted by Chinese authorities for discussing Falun Gong. Although the father's affidavit remains unsigned, we do not discount its contents.  The test for admissibility of evidence in deportation proceedings is whether the evidence is probative and its admission fundamentally fair.  Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003).  Fairness in the evidentiary context is closely related to the reliability and trustworthiness of the evidence.  Id. (quoting Felzcerek v. I.N.S., 75 F.3d 112, 115 (2d Cir. 1996)).  We recognize the controlled circumstances under which the affidavit was prepared – Li's attorney prepared the affidavit based on telephone conversations with Li's father – and are puzzled that an affidavit was required to be drafted for the father's signature rather than the father drafting a letter or affidavit himself and forwarding it to counsel.  But inasmuch as Li has introduced the affidavit in his own case, we will treat it as reliable and trustworthy.

of specific documentary evidence or by the credible and persuasive testimony of the applicant. Lukwago v. Ashcroft, 329 F.3d 157, 177 (3d Cir. 2003). If an applicant is able to make such a showing, the Attorney General has discretion to decide whether to grant him asylum. 8 U.S.C. § 1158(b)(1).

Withholding of removal under the INA is closely related to asylum, but unlike asylum which is discretionary, withholding of removal must be granted to aliens who have made the necessary showing of persecution upon return to their home country. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003); 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(1). As a result, the standard of proof required for withholding of removal is more rigorous than that required for asylum. Zubeda, 333 F.3d at 469. Because the standard for withholding of removal is higher than, albeit similar to, the standard for asylum, if a petitioner is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal. Shardar v. Ashcroft, 382 F.3d 318, 324 (3d Cir. 2004) (citation omitted).

Withholding of removal under the CAT requires the petitioner to show that "more likely than not" he will be tortured if returned to his country. Berishaj v. Ashcroft, 378 F.3d 314, 332 (3d Cir. 2004). Unlike asylum, a CAT claim lacks a subjective component, and instead requires petitioner to establish by objective evidence that he is likely to be tortured in the future. Zubeda, 333 F.3d at 471. Consequently, claims for relief under the CAT are "analytically separate" from claims for asylum and withholding of removal

under the INA.  Id. at 476.  The IJ's rejection of asylum and withholding of removal

claims, therefore, does not control the analysis of a CAT claim.  Id.  Accordingly, an

adverse credibility determination for purposes of denying asylum and withholding of

deportation claims does not defeat a petitioner's ability to establish a CAT claim.  Id.  In

fact, we have instructed unequivocally that "[a]llowing the taint of . . . [an] adverse

credibility determination to bleed through to the [IJ's] consideration of [a] claim under

the Convention Against Torture . . . is error."  Id.

Where, as here, the BIA affirms without opinion, the IJ's opinion becomes the

final agency determination for purposes of review.  8 C.F.R. § 1003.1(e)(4); Berishaj, 378

F.3d at 322.  We review the factual findings underlying the IJ's determinations under the

substantial evidence standard, reversing only if the evidence presented by Li "was such

that a reasonable factfinder would have to conclude" that Li suffered past persecution or

had a well-founded fear of future persecution.  Dia v. Ashcroft, 353 F.3d 228, 248 (3d

Cir. 2003) (en banc) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

Likewise, adverse credibility determinations are reviewed for substantial

evidence.  Gao, 299 F.3d at 272.  Although deference is afforded to reasonable inferences

by the IJ regarding conflicting evidence, the IJ must provide specific reasons for making

an adverse credibility determination. Balasubramanrim v. I.N.S., 143 F.3d 157, 162 (3d

Cir. 1998).  Minor inconsistencies in the record that reveal nothing about an asylum

applicant's fear for his safety are inadequate to sustain an  adverse credibility finding.

7

<u>Senathirajah v. I.N.S.</u>, 157 F.3d 210, 221 (3d Cir. 1998). Rather, the discrepancies must involve the "heart of the asylum claim." <u>Gao</u>, 299 F.3d at 272.

III

We conclude that the IJ's adverse credibility determination is supported by substantial evidence. Numerous inconsistencies exist between Li's testimony, his asylum application, his airport statement, and his father's uncorroborated affidavit.[4] Li declared to airport officials that he left China to avoid arrest by police for allegedly being involved with drug-related gangs. However, Li did not mention his involvement in Falun Gong as a basis for asylum during his airport interview, and he did not mention fear of arrest for gang involvement in his asylum application.

In addition, Li testified that his parents were at work when he observed the teacher's arrest and that he did not recognize anyone at the scene. However, his father's Declaration stated that he, too, observed the arrest. Li testified initially that he watched the teacher get arrested at the teacher's home. However, Li subsequently testified that he did not observe the teacher being arrested at his home, and upon further questioning was unable to explain where he was located when the teacher was arrested.

---

[4]Li claims that using an unsigned affidavit to challenge his credibility violates his due process rights. To sustain a due process claim, "an alien alleging a denial of a due process right must also show that the denial of the right resulted in 'substantial prejudice.'" <u>Cagas v. Ashcroft</u>, No. 03-1049, slip op. At 518 (3d Cir. Feb 11, 2004) (citation omitted). However, because we treat the unsigned affidavit as trustworthy and reliable, <u>see</u> <u>supra</u> note 2, Li is unable to demonstrate that he has suffered prejudice as a result of its admission.

Furthermore, Li testified that he destroyed the Falun Gong materials while his parents were at work. However, Li declared in his asylum application that "after the police came looking for me[,] my family and I hid my falon gong books." Different still, Li's father stated in his uncorroborated affidavit that <u>he</u> destroyed Li's Falun Gong material.

Additionally, Li testified that he left for his Aunt's house upon destroying the Falun Gong material, yet in subsequent testimony Li stated that he left for his Aunt's house the next day. Finally, Li declared at the airport that he had never been arrested, but he subsequently testified that he had been arrested in 2002. See <u>supra</u> section I. All of these discrepancies existed in the face of Li having testified that everything he told airport inspectors was true.

Although some discrepancies are less critical than others and a few may even be reconciled,[5] many, such as Li's failure to state in his airport interview his primary reason for requesting asylum – fear of persecution for practicing Falun Gong – go to the heart of

---

[5]The discrepancies in Li's testimony that may be reconciled all appear minor. For example, Li testified that he did not see his father at the scene of the arrest. However, his father's affidavit stated that he had been among the crowd assembled at the scene to witness the arrest. The fact that, unbeknownst to Li, his father had been among the crowd reconciles the apparent discrepancy. Likewise, Li's testimony that he hid or destroyed all his Falun Gong materials except the DVD and a Falun Gong book can be reconciled with the statement in his father's affidavit that he, too, hid some pamphlets, perhaps some that Li overlooked. It is quite possible that Li missed some Falun Gong documents in his effort to hide or destroy them. However, the fact that some of the many discrepancies in this case may be reconciled does not diminish the major inconsistencies which go to the heart of the asylum claim.

Li's asylum claim and cannot be reconciled.[6] The IJ was therefore justified in finding Li incredible and the IJ's consequent conclusion that Li had no genuine subjective fear of future persecution is supported by substantial evidence. Accordingly, the IJ properly determined that Li was ineligible for asylum.

Because a petitioner who cannot satisfy the standard for asylum is necessarily unable to satisfy the more stringent standard for withholding of removal, Shardar, 382 F.3d at 324 (citation omitted), and the IJ properly determined that Li was not entitled to asylum because he lacked credibility, the IJ correctly denied Li's application for withholding of removal as well.

The same cannot be said, however, regarding the IJ's denial of withholding of removal pursuant to the CAT. Li asserts that the IJ improperly denied him withholding of removal pursuant to the CAT solely on the basis of the adverse credibility determination. We agree. After elaborating on Li's lack of credibility in the context of asylum and withholding of removal, the IJ proclaimed, "For the same reasons respondent's tandem claim under Article 3 of the U.N. Torture Convention will also be denied." (emphasis added). As noted above, however, a CAT claim is not merely a subset of claims for

---

[6]We recognize that an airport interview is an inherently limited vehicle for an alien to convey the fear that is necessary for his asylum claim, and the BIA must factor in these limitations when employing the interview against an asylum petitioner. See Senathirajah v. I.N.S., 157 F.3d 210, 218 (3d Cir. 1998). However, where, as here, inconsistencies between the airport interview and later statements are fundamental to the asylum claim and the interview was conducted in such a manner as to ensure reliability, the discrepancies support an adverse credibility determination. Chen v. Ashcroft, 376 F.3d 215, 224 (3d Cir. 2004).

10

asylum and withholding of removal, but requires a separate and independent analysis of the relevant evidence. Zubeda, 333 F.3d at 476 (citing Kamalthas v. I.N.S., 251 F.3d 1279, 1283 (9th Cir. 2001)). Instead of evaluating, as required, the documentary evidence Li submitted regarding the Chinese Government's systematic persecution of Falun Gong adherents,[7] the IJ focused solely on Li's adverse credibility, stating "At a minimum, respondent is obligated to present credible testimony to support his claim." These statements strongly suggest the IJ denied Li's CAT claim on the basis of his adverse credibility.

Indeed, the IJ devoted the entirety of his opinion to Li's adverse credibility and did not so much as mention the documentary evidence describing China's persecution of Falun Gong practitioners or the evidence connecting Li to Falun Gong. Because BIA regulations require it to consider all relevant evidence of the possibility of torture, including country conditions, see 8 C.F.R. § 208.16(c)(3)(i-iv), and the CAT and asylum

---

[7]Li submitted the following evidence documenting his likely persecution as an adherent of Falun Gong: 1) the U.S. Department of State's Country Report on Human Rights Practices for China 2002, detailing that "mere belief in Falun Gong, [even] without any manifestations of its tenets, has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment, and in many cases, to suffer torture or death;" 2) the U.S. Department of State's International Religious Freedom Report 2002 for China, detailing that "the practice of Falun Gong or possession of its literature has been sufficient grounds for practitioners to receive punishments ranging from loss of employment and educational opportunities to imprisonment[,]" torture, and even death; 3) an Amnesty International report describing how the Chinese Government has "tortured or ill-treated in detention" adherents of Falun Gong; and 4) a copy of his father's affidavit which, having been confiscated by Chinese Customs, demonstrates that the Chinese Government associates Li with Falun Gong.

analyses focus on different elements and therefore must be treated independently, the IJ may not deny a petitioner's CAT claim solely on the basis of its determination that the petitioner is incredible.

The IJ therefore should not have treated its rejection of Li's claims for relief under the INA as determinative of his CAT claim, and should have considered all of the evidence Li submitted before rejecting his claim. See Ramsameachire v. Ashcroft, 357 F.3d 169, 185 (2d Cir. 2004). Because the IJ failed to do so, and the BIA affirmed, we vacate the BIA's dismissal of Li's CAT claim and remand for further proceedings.

IV

For the foregoing reasons, we will deny the Petition for Review with respect to Li's claims for asylum and withholding of deportation. We will grant the Petition for Review with respect to the BIA's dismissal of Li's CAT claim, and remand for further proceedings consistent with this opinion. See Senathirajah v. I.N.S., 157 F.3d 210, 222 (3d Cir. 1998).