Zoran **BRADVICA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 97–1336.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1997.

Decided Oct. 21, 1997.

Donald E. Puchalski (argued), Sklodowski, Franklin, Puchalski & Reimer, Chicago, IL, for Petitioner.

Ellen Shapiro, Department of Justice, Office of Immigration Litigation, Washington, DC, Samuel Der–Yeghiayan, Immigration & Naturalization Service, James B. Burns, Office of the United States Attorney, Chicago, IL, David M. McConnell, Kristal A. Marlow, James A. Hunolt, Department of Justice, Civil Division, Immigration Litigation, Holly Gimbel (argued), United States Department

of Justice, Civil Division, Washington, DC, for Respondent.

Before POSNER, Chief Judge, and MANION and EVANS, Circuit Judges.

MANION, Circuit Judge.

In 1995, Zoran Bradvica had overstayed his visa and was in the United States illegally. Because he wanted to remain in this country, he applied to the Immigration and Naturalization Service for asylum and withholding of deportation. He alleged past persecution and a fear of future persecution if he were to return to Bosnia–Herzegovina. He also alleged rights under customary international law and the Fourth Geneva Convention. The Immigration Judge (IJ) denied his application and the Board of Immigration Appeals (BIA) affirmed. Because we find no errors to justify overruling the BIA, we deny Bradvica's petition for review.

### I.

Zoran Bradvica is a 32–year–old Croat who formerly lived in Bosnia–Herzegovina when it was still a republic of the former Yugoslavia. While there, he, his parents and two sisters supported themselves by farming a small plot of land near the town of Ljubuski. In 1986, Bradvica served on active duty in the Yugoslavian army for one year, after which he was honorably discharged.

In 1990, the Communist Party still controlled Yugoslavia, but there was considerable unrest. Bradvica was a member of the Democratic Union, which he stated was an anti-communist, prodemocracy party. The party was, of course, illegal. In July 1990, Bradvica carried a Croatian flag in a large pro-democracy demonstration in Ljubuski; both demonstrating and carrying the flag were illegal. The Yugoslavian police arrested Bradvica and four others, took them to the station, and interrogated them for about an hour as a group. The police then interrogated Bradvica alone for an additional half-hour. The police held Bradvica for two days and interrogated him twice more; each inter-

rogation lasted less than an hour. The police did not physically abuse Bradvica, although they threatened to punch and kick him. Bradvica was released without being charged.

In August 1990, Bradvica participated in another pro-democracy rally in Ljubuski. Although the police were present, they did not stop that rally and only arrested persons who were drunk or disorderly. In September 1990, Bradvica participated in a third rally, which the police did break up. Bradvica and his friends fled and then went to a cafe and had drinks. He was not arrested or otherwise harassed by the police following this demonstration.

Also in September 1990, Bradvica applied for and obtained a visa to visit the United States. Bradvica got the visa on September 23 and he entered the United States on October 1. After his visa expired on April 1, 1991, Bradvica remained in the United States illegally. Shortly after Bradvica left Yugoslavia, the country broke apart and conflicts erupted within some of the former republics. In March 1992, the various factions in Bosnia–Herzegovina began fighting a lengthy civil war. Bradvica's family's home was destroyed and his parents and one sister are refugees in Croatia.

On June 12, 1995, Bradvica applied for asylum with the INS. On August 17, 1995, the INS began deportation proceedings against Bradvica. At a hearing before the IJ, Bradvica conceded that he was deportable but requested asylum and withholding of deportation. Bradvica also raised claims under customary international law and the Fourth Geneva Convention. The IJ denied his claims and the BIA affirmed. The BIA did not address Bradvica's international law claims. Bradvica then petitioned this court to review the BIA's decision.

### II.

### A.

The standard of review applicable in this case is well settled.[1] Where as here

---

1. We have jurisdiction to review the BIA's decision under 8 U.S.C. § 1105(a). This provision

was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA),

the BIA renders its own decision rather than merely adopting the IJ's decision, we review the BIA's decision without regard to the IJ's findings. *Gonzalez v. INS*, 77 F.3d 1015, 1023 (7th Cir.1996). While we review the BIA's legal conclusions *de novo*, our review of its factual findings is limited to determining whether they are supported by "substantial evidence." *Borca v. INS*, 77 F.3d 210, 214 (7th Cir.1996). To win a reversal under this deferential standard, Bradvica must show not merely that the record evidence supports a conclusion contrary to that reached by the BIA but that the evidence compels that contrary conclusion. *INS v. EliasZacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992).

**B.**

■ Under 8 U.S.C. § 1158(a), the Attorney General has discretion to grant asylum to an alien who can show that he is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). The alien must show that he is unable or unwilling to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Persecution is not defined by the statute, but we have held that it must be punishment or the infliction of harm; mere harassment does not amount to persecution. *Borca v. INS*, 77 F.3d at 214. An alien may show either that he has been persecuted in the past or that he has a reasonable fear of future persecution. *Angoucheva v. INS*, 106 F.3d 781, 788 (7th Cir.1997). A showing of past persecution creates a rebuttable presumption in favor of granting asylum. *Id.* For a fear of future persecution to support an asylum claim, the fear must be both subjectively real and ob-

jectively reasonable. *Borca v. INS*, 77 F.3d at 214. Bradvica claims both that he suffered past persecution and that he reasonably fears future persecution.

■ Bradvica asserts that the Yugoslavian government persecuted him when the police arrested and detained him following the August 1990 pro-democracy rally. This mistreatment does not rise to the level of persecution. In *Borca v. INS*, we upheld the BIA's finding that the petitioner had not been persecuted where, on account of her political activities, she had twice been arrested, twice had her home searched, and had received numerous threatening phone calls. We held that this merely amounted to "harassment." 77 F.3d at 215. Similarly, in *Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir.1990), we upheld the BIA's finding that the petitioner had not been persecuted where he had been arrested, detained, and had his home searched numerous times over a four-year period. The Yugoslavian government's mistreatment of Bradvica does not even rise to the level of mistreatment suffered by the petitioners in *Borca* and *Zalega*, and certainly does not compel the conclusion that he was persecuted.[2]

■ To support his claim of a well-founded fear of future persecution, Bradvica relies on the conditions in Bosnia–Herzegovina generally (and his village in particular) and the possibility that he would be punished as a "military deserter." Bradvica discusses at length the general conditions of strife in Bosnia–Herzegovina. His parents and one sister are apparently refugees in Croatia, where they fled after their home was destroyed. Bradvica believes that the persons in power in his village are only out for profit and place

Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), *as amended*, Act of October 11, 1996, Pub.L. No. 104302, 110 Stat. 3656. Under § 309 of the IIRIRA, the Act's provisions do not apply to Bradvica's petition for review, except for a filing time limit which he met, because he was in deportation proceedings prior to April 1, 1997. Thus, throughout this opinion, we rely on the statutory provisions as they existed prior to the enactment of the IIRIRA. *See Bereza v. INS*, 115 F.3d 468, 470 n. 2 (7th Cir.1997).

2. Although not necessary to our decision today, we note that Bradvica's mistreatment came from the former government of Yugoslavia. Even if that government had persecuted Bradvica, the INS might have rebutted the presumption of granting asylum by showing that the changes since the fall of the communist regime and the breakup of the former Yugoslavia made it unlikely that Bradvica would be persecuted because of his past anti-communist activities. *Angoucheva v. INS*, 106 F.3d at 788; *Stankovic v. INS*, 94 F.3d 1117, 1119 (7th Cir.1996) (citing 8 C.F.R. § 208.13(b)(1)(I)).

no value on human life. He also believes that the economy is bad and there are few prospects to earn a living. We recognize that the people of Bosnia–Herzegovina endured great suffering during the lengthy conflict and still suffer under the harsh conditions in the conflict's aftermath. (Bradvica has avoided that suffering so far by remaining in the United States.) But generalized conditions of strife do not support a claim for asylum because they do not show that Bradvica himself will be singled out for persecution on account of one of the enumerated grounds. *Sivaainkaran v. INS*, 972 F.2d 161, 165 (7th Cir.1992). If we accepted Bradvica's broad definition of "persecution" rather than the narrow one that Congress enacted, most of the population of Bosnia–Herzegovina—and many other war-torn areas—would be eligible for asylum in the United States.

■ Bradvica also attempts to support his claimed fear of future persecution with two letters sent to him in Bosnia by the "Croatian Defense Council" or HVO.[3] The HVO sent Bradvica a "notification" dated July 23, 1992, stating "all military obligants" who were living outside the "Croatian Community of Herzeg–Bosnia" had to report for military duty within 15 days. The HVO sent Bradvica a letter dated January 18, 1993, stating that because he had failed to respond to the mobilization call and had failed to financially support the HVO, the "National Defense Office" for Ljubuski had brought charges against him and that he was being classified as a "military deserter." But nothing in this record indicates that Bradvica's refusal to serve in the HVO forces or otherwise support its cause was motivated by political opinion rather than simply his desire to avoid the dangers of the conflict. And the HVO's notice to Bradvica makes clear that he was not singled out for recruitment because of his political opinion but rather the notice came as part of the HVO's attempt to mobilize all able-bodied Bosnian Croats to support it. Whatever action the HVO may take against Bradvica, it will not be persecution "on account" of his political opinion.

The Supreme Court's decision in *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), supports this conclusion. In that case, the Court held that a guerilla organization's attempt to recruit the alien—and his fear of reprisal for refusing to join—did not necessarily constitute persecution on account of political opinion. The Court explained that in this context persecution "on account of" political opinion means that even if the alien could establish that he has a political opinion, "[the alien] still has to establish that the record also compels the conclusion that he has a 'well-founded fear' that the guerillas will persecute him *because of* that political opinion, rather than because of his refusal to fight with them." 502 U.S. at 483, 112 S.Ct. at 816 (emphasis in original). We find the Court's reasoning equally applicable here. Nothing on this record suggests that Bradvica's refusal to join the HVO or the HVO's classifying him as a "military deserter" was politically motivated.

■ While one might be tempted to characterize the HVO's recruiting efforts as being "on account of" Bradvica's "nationality" because the HVO singled out Croats rather than Bosnian Serbs or Muslims, we decline to interpret the statute to encompass this situation. It would be a misapplication of the statute to hold that the Croatian provisional authority's attempt to recruit all Croats (and possibly punish those who refused) to serve in its fight against non-Croats amounted to "persecution on account of ... nationality."[4]

---

**3.** At oral argument, there was some confusion over the HVO's status. According to the country report that was made a part of the record before the IJ, the HVO, which had once fought for an independent Croat republic within Bosnia, acted as the "provisional Croatian authority within the Federation [of Bosnia–Herzegovina]." *Country Reports on Human Rights Practices for 1994*, S. Prt. 104–12 (Feb. 1995), at 755. We note that by August 1995, the HVO controlled 50,000 troops, which was one-third the number of troops that

the Bosnian government itself controlled. *See Balkans 101*, L.A. Times, August 11, 1995.

**4.** The BIA concluded below and the INS argues here that Bradvica's claim that he would be prosecuted as a "military deserter" was "implausible" because Bradvica had served in the Yugoslavian army and had been honorably discharged. But his prior service is irrelevant. It does not follow as a matter of logic nor does anything in the record suggest that the HVO would decline to prosecute Bradvica merely be-

In short, Bradvica's asylum claim fails because the record does not compel the conclusion that the BIA's findings were error. Because he cannot show an entitlement to asylum, necessarily he cannot meet the higher burden for withholding of deportation under 8 U.S.C. § 1253(h). *Mitev v. INS*, 67 F.3d 1325, 1333 (7th Cir.1995).

## C.

■ Bradvica also claims a right to remain in the United States based on customary international law and Article 3 of the Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 6 U.S.T. 3516 ("the Fourth Geneva Convention"). Bradvica raised these claims below, but the BIA made no comment on them. The INS asserts that the BIA lacked jurisdiction to hear Bradvica's international law claims. We agree.

■ In *In re Medina*, 19 I & N Dec. 734 (1988), the BIA rejected the exact arguments that Bradvica now makes. The BIA narrowly interpreted its jurisdiction as limited only to what had been specifically delegated by the Attorney General, and held that the Attorney General had not delegated jurisdiction to grant relief under customary international law or treaty law. We defer to the agency's interpretation so long as it is reasonable and does not contradict the unambiguous language of the statute or regulation. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); *Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1006 (7th Cir.1997) (en banc). In *Galo–Garcia v. INS*, 86 F.3d 916, 918 (9th Cir.1996), the court agreed with the BIA's interpretation that it lacked jurisdiction over claims arising under international law. In *Johnson v. INS*, 962 F.2d 574, 579 (7th Cir.1992), we relied on *In re Medina* for its holding that the BIA had jurisdiction over only that which the Attorney General had delegated to it. Bradvica offers no argument as to why the BIA's interpretation of its jurisdiction is not reasonable. Consequently, we find no error in the BIA's refusal to address Bradvica's international law claims.[5]

Because the BIA's decision was based on substantial evidence and it did not err in refusing to pass on Bradvica's international law claims, Bradvica's petition for review is

DENIED.

---

cause he had previously served in the Yugoslavian army. Although the BIA relied in part on this irrelevant consideration, this does not undermine the BIA's otherwise correct decision.

5. We need not reach the merits of Bradvica's international law claims, but we note in passing that they appear frivolous. In *In re Medina*, the BIA examined the merits of identical claims and rejected them. Although *Medina* is not binding precedent in this court, Bradvica has offered no argument as to why the BIA's conclusions in *Medina* were wrong. Moreover, customary international law is not applicable in domestic courts where there is a controlling legislative act, such as the statute here. *Committee of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 939 (D.C.Cir.1988). And a prior treaty does not trump the provisions of a subsequent legislative act. *Id.* at 936. Congress has determined the standards under which aliens may seek asylum in the United States, and Bradvica loses under those standards.