**Joseph M. GLISSON and John B. Wallace, Plaintiffs–Appellants,**

v.

**UNITED STATES FOREST SERVICE, et al., Defendants–Appellees.**

No. 97–2840.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 26, 1998.

Decided March 13, 1998.

Eric M. Schwing (submitted), Babette P. Salus, Schwing & Salus, Springfield, IL, for Plaintiffs–Appellants.

Andrew C. Mergen, Department of Justice, Land & Natural Resources Division, Washington, DC, William E. Coonan, Office of the United States Attorney, Civil Division, Fairview Heights, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.

POSNER, Chief Judge.

■ Before us is an appeal from a grant of summary judgment to the Forest Service in a suit to enjoin an "ecological restoration" project in a 10,500 acre tract ("Opportunity Area 6") of the Shawnee National Forest in southern Illinois. The litigation has a long history unnecessary to recount, as the issues presented by the appeal are narrow ones. The first concerns the Service's compliance with a federal regulation that requires it "to maintain viable populations of existing native" species. 36 C.F.R. § 219.19. The project, although designed to promote a variety of fauna and flora native to the area, will have adverse effects on shortleaf pines and pine warblers. The Forest Service, however, interprets the word "native" in the regulation to mean "native to the project area," that is, to OA6, rather than native to the state or even to the national forest; and it interprets "native" to mean existing in a "natural" state in the area rather than introduced by man in recent times. On the basis of these interpretations, the Service held that the regulation does not bar the restoration project. The pines, which in turn provide a habitat for the warblers, were first planted in OA6 during the 1930s and 1940s, and that is too recent to satisfy the Service's conception of what it means for a plant or animal to be "native" to an area.

■ An agency is entitled to broad latitude in interpreting its regulations. E.g., Thomas Jefferson University v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994); Arkansas v. Oklahoma, 503 U.S. 91, 112, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992); Lyng v. Payne, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341–42, 90 L.Ed.2d 921 (1986). Since the regulation in question contains no definition of "native," we are required to uphold the Forest Service's interpretation unless it is unreasonable. E.g., Thomas Jefferson University v. Shalala, supra, 512 U.S. at 512, 114 S.Ct. at 2386–87; Bradvica v. INS, 128 F.3d 1009, 1014 (7th Cir.1997). It is not.

Second, the environmental assessment prepared for the project does not mention the fact that the shortleaf pine is listed as an endangered species in the Illinois Administrative Code, § 1050.30. (It does mention, and sufficiently discuss the project's impact on, the pine warblers. See *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 351, 109 S.Ct. 1835, 1846–47, 104 L.Ed.2d 351 (1989).) An environmental assessment or environmental impact statement must discuss any inconsistency between a proposed action, such as the restoration project at issue here, and local law. 40 C.F.R. § 1506.2(d). The Service argues that the shortleaf pines fall within an exemption in the Illinois endangered-species law for "individual plants," Ill. Adm.Code § 1050.20, but this seems doubtful, considering the number of trees that are to be cut down. But we do not think the oversight in the environmental assessment warrants reversal. The federal regulation does not require that the Service bow to local law—only that it consider it. And if it had done that here, it would doubtless have concluded that since the State of Illinois has approved the ecological-restoration project and has never indicated that it considers the shortleaf pines in OA6 endangered, and since two substantial stands of native shortleaf pines ("native" by the Service's exacting definition) will remain, the impact on the pines is not an adequate reason for blocking the project. As in the closely related case of *Cronin v. U.S. Dept. of Agriculture,* 919 F.2d 439, 442–43 (7th Cir. 1990), "a remand for better findings would serve the plaintiffs' interests in delaying the [project], but no other interests, for it is plain what those findings must be. *Chenery [SEC v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ] does not require futile remands."

No other issues need be discussed.

AFFIRMED.