**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0935n.06**
**Filed: November 28, 2005**

**No. 04-3956**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DUMITRU BICHI, | ) | |
| | ) | |
|   Petitioner-Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, ATTORNEY | ) | |
| GENERAL OF THE UNITED STATES, | ) | |
| | ) | |
|   Respondent-Appellee. | ) | |

Before: MOORE and SUTTON, Circuit Judges; BUNNING, District Judge.[*]

PER CURIAM. Dumitru Bichi asks us to vacate an immigration judge's denial of his request for cancellation of removal under 8 U.S.C. § 1229b(b)(2)(A). Because Bichi has failed to establish a required eligibility factor and because the IJ said that he would have exercised his discretion to deny relief even had Bichi established eligibility, we deny the petition for review.

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

Dumitru Bichi, a native and citizen of Romania, entered the United States on January 17, 1997. Under the conditions of admittance, he was not permitted to remain beyond February 16, 1997.

In the spring of 1998, Bichi met Penelope Price, an American citizen, in New York City, where Price was a student. The relationship appeared to be short-lived because Price ended it in the fall of 1998. But in September 1999, Price gave birth to a daughter, and tests determined that Bichi was the father. For two years, Bichi provided occasional financial support to Price and his daughter, and in September 2001 Bichi married Price in Memphis, Tennessee. While both spouses agree that their marriage was a failure, they offer different explanations why. According to Bichi, Price battered him a number of times, and in one incident (November 21, 2001) she "kneed him in the groin, and threw [their daughter] at him." IJ Op. at 3. Bichi's friends and counselors attempted to support his claim, stating that he had told them that Price abused him, though none of these individuals had witnessed any of the abuse. Police and medical reports also did not corroborate any history of abuse, apparently because Bichi did "not think that such family problems should be solved by the police." JA 230.

According to Price, the opposite was true. In late November 2001, Bichi "snapped or something. . . . [H]e had kicked me and chased me. He had knocked the phone out of my hand, grabbed my arms, wouldn't let me use the phone, and he was—it was frightening." JA 261. After

this incident, Price called the police, and on November 22, 2001, Bichi was arrested. He was tried for domestic assault and acquitted. Nonetheless, on January 8, 2003, a Tennessee criminal court entered a permanent protective order against Bichi. Since the arrest, Bichi has not seen Price, who served him with divorce papers after the trial, though he has been permitted supervised visits with his daughter.

On January 25, 2002, the Immigration and Naturalization Service filed a Notice to Appear, charging Bichi under § 237(a)(1)(B) of the Immigration and Nationality Act as "an alien admitted as a nonimmigrant who has remained for a longer time than permitted." IJ Op. at 1. At his removal hearing, Bichi admitted he was removable but sought discretionary cancellation of his removal under the "[s]pecial rule for [a] battered spouse or child." 8 U.S.C. § 1229b(b)(2). The IJ rejected his request, determining that Bichi was not eligible for this discretionary relief because he did not establish (1) that he was battered or (2) that his removal would result in extreme hardship to himself or his child. Even had Bichi established his eligibility, the IJ added, he "would not have been disposed to exercise discretion in [Bichi's] favor, in light of the protective order issued . . . against him." IJ Op. at 10. Invoking its streamlining procedures, the Board of Immigration Appeals affirmed the IJ's order without opinion.

II.

Through the "[s]pecial rule for [a] battered spouse or child," 8 U.S.C. § 1229b(b)(2), Congress has instructed that "the Attorney General may cancel removal of . . . an alien who is

inadmissible or deportable from the United States if the alien demonstrates that (i) the alien has been

battered or subjected to extreme cruelty by a spouse . . . who is or was a United States citizen . . . ;

(ii) the alien has been physically present in the United States for a continuous period of not less than

3 years . . . ; (iii) the alien has been a person of good moral character . . . ; (iv) the alien is not

inadmissible [under certain sections not relevant here]; and (v) the removal would result in extreme

hardship to the alien, the alien's child, or the alien's parent."  § 1229b(b)(2)(A).

The relief provided is discretionary ("the Attorney General *may* cancel removal"), and the

IJ may not cancel removal unless the alien demonstrates that he meets all five eligibility

requirements.  Because the BIA affirmed the IJ's decision without opinion, we review the decision

of the IJ.  *See Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005); *see also* 8 C.F.R.

§ 1003.1(e)(4)(ii).

Bichi's petition for review faces several obstacles, only a few of which we need to address

in rejecting it.  The relevant statutes, as an initial matter, restrict our jurisdiction to review some of

Bichi's arguments.  Under 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review

any judgment regarding the granting of relief under section . . . 1229b."  And under

§ 1252(a)(2)(B)(ii), we cannot review "any other decision or action of the Attorney General . . . the

authority for which is specified . . . to be in the discretion of the Attorney General"—which includes

"[t]he determination of what evidence is credible and the weight to be given that evidence," matters

that are "within the sole discretion of the Attorney General."  § 1229b(b)(2)(D).  At the same time,

Congress has said that "[n]othing in . . . this Act . . . which limits or eliminates judicial review, shall

be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." § 1252(a)(2)(D); *see also Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004) (holding that "we may review the non-discretionary decisions that underlie determinations that are ultimately discretionary").

Against the backdrop of these jurisdictional restrictions, just two of Bichi's substantive challenges to the IJ's decision might qualify as legal challenges—his claim that the IJ did not separately examine his charges of battery *and* extreme cruelty, and his claim that the IJ "made no explicit finding regarding [his] credibility," meaning that his story, not Price's, should be credited. Bichi Br. at 28. Both of these arguments, however, go to whether Bichi was battered or subjected to extreme cruelty, the first of five conjunctive requirements for eligibility for relief under § 1229b(b)(2)(A). Even if he prevailed on these points, he cannot establish the fifth requirement under the provision ("extreme hardship"), which he must do in order to establish eligibility for relief. Bichi's only contention on this score is an unreviewable one, a challenge to the weight given to the evidence. Any error, in short, was necessarily harmless. *See Gilaj v. Gonzales*, 408 F.3d 275, 290 (6th Cir. 2005) ("There is no indication in the record that the outcome of the proceeding would have been different . . . . Accordingly, if the IJ did err . . . , the error is harmless."); *cf. Billeke-Tolosa*, 385 F.3d at 713 ("Because the IJ suggested that Billeke-Tolosa would have received discretionary relief, but for factors that the IJ was not permitted to consider, [the error] was necessarily prejudicial.").

Further evidence that any errors here were harmless comes from the coda to the IJ's decision, where the IJ stated that "[e]ven if [Bichi] had met [his burden of proof], the Court would not have been disposed to exercise discretion in his favor, in light of the protective order issued by the Shelby County Criminal Court Judge." IJ Op. at 10. This discretionary judgment also is not reviewable, *see* § 1252(a)(2)(B)(i), further indicating that any alleged errors in this proceeding did not affect its outcome. *See also Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005) ("The INA specifically divests jurisdiction of a court to review judgments regarding the granting of discretionary relief, including the cancellation of removal."); *cf. Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("Remand will not always be appropriate when the Board has erred in determining eligibility for discretionary relief from deportation. If the Board has already properly exercised its discretion to deny relief, remand would be a futile gesture."); *Dhine v. Slattery*, 3 F.3d 613, 619 (2d Cir. 1993) ("We need not determine [whether the IJ erred] because the Attorney General has statutory discretion to deny [petitioner] asylum even if his expressed fear of persecution is well-founded, and because the BIA has plainly stated 'that we would not grant asylum in the exercise of discretion even if the applicant established a well-founded fear of persecution.'"); *Hibbert v. INS*, 554 F.2d 17, 21 (2d Cir. 1977) ("It is clear from numerous, unequivocal statements by the [IJ] and the Board that they would not grant [petitioner] the discretionary privilege of voluntary departure. In view of this, there is no reason to remand the case to the Board for a pointless determination of his technical eligibility, since the end result will be deportation.").

Finally, Bichi brings a procedural attack, arguing that the BIA abused its discretion by using the "affirmance without opinion" procedure in his case. *See* 8 C.F.R. § 1003.1(e)(4) ("The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that . . . any errors in the decision under review were harmless."); *see also Denko v. INS*, 351 F.3d 717 (6th Cir. 2003) (upholding the constitutionality of the procedure). As we noted in *Celaj v. Gonzales*, No. 04-3503, 2005 WL 1386405, at *4 (6th Cir. June 10, 2005), it is not clear whether this court has statutory jurisdiction to entertain this claim. As we have decided before, however, we need not reach that issue here. Even if we had jurisdiction, we would conclude, given the harmlessness of the alleged error, that the Board did not abuse its discretion by streamlining this case. *See, e.g.*, *id*. at *5 ("As we have already shown, however, the IJ did not err . . . , a conclusion that undermines [the petitioner's] claim that the BIA misapplied its own streamlining regulations and a conclusion that forecloses the claim that [the petitioner] was prejudiced by any misapplication of the streamlining provisions.").

III.

For these reasons, we deny the petition for review.