NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0576n.06
Filed: September 25, 2008

No. 07-4064

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AHMED OULD HABIB RAMDANE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| MICHAEL B. MUKASEY, Attorney General | ) | IMMIGRATION APPEALS |
| of the United States | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**Before: SUTTON and COOK, Circuit Judges; and ROSE,\* District Judge.**

**ROSE, District Judge**. Ahmed Ould Habib Ramdane seeks review of an order of the Board of Immigration Appeals upholding the denial of his application for asylum and his application for cancellation of removal. Because the Immigration Judge's and the Board of Immigration Appeals' decisions regarding the denial of asylum are supported by reasonable, substantial and probative evidence on the record we deny Ramdane's petition for review of his application for asylum.

We have been given no reason to believe that the Immigration Judge's and Board of Immigration Appeals' decisions regarding the denial of Ramdane's application for cancellation of removal are not discretionary and thus reviewable. If Ramdane's petition for review of the denial of his application for cancellation was reviewable, it would fail on the merits.

---

\*The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

# I. JURISDICTION

Our jurisdiction is governed by section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252. Section 1252(a) provides this Court with jurisdiction to review the denial of Ramdane's petition for asylum.

However, our jurisdiction to review Ramdane's application for cancellation of removal faces two obstacles. First, § 1252(a)(2)(B)(i) prevents us from reviewing denials of applications for cancellation of removal. *Aburto-Rocha v. Mukasey*, --- F.3d ---, 2008 WL 2875384 at *1 (6th Cir. 2008). Second, § 1252(a)(2)(B)(ii) prevents us from reviewing "any other decision or action of the Attorney General which is specified" to be in his or her "discretion." *Id.*(quoting *Bichi v. Gonzales*, 157 F. App'x 835, 837 (6th Cir. 2005)).

Ramdane is seeking review of the denial of his application for cancellation of removal and that decision generally rests in the discretion of the Attorney General. *Id.* (citing *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007); *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949-50 (6th Cir. 2002)). Therefore, §§ 1252(a)(2)(B)(i) and 1252(a)(2)(B)(ii) would seem to indicate that we do not have jurisdiction to review the denial of Ramdane's application for cancellation of removal.

However, there are two exceptions to the provisions set forth in §§ 1252(a)(2)(B)(i) and 1252(a)(2)(B)(ii). *Id.* at *2. One is explicitly set forth by the statute and the second is inferred from the general framework of the statute. *Id.*

First, the statute elsewhere explicitly permits us to review "constitutional claims or questions of law." *Id.* (quoting 8 U.S.C. § 1252(a)(2)(D)). Second, non-discretionary decisions are subject to our jurisdiction where they "underlie determinations that are ultimately discretionary." *Id.* (quoting *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004)).

In this case, Ramdane argues that he has established that he met all of the eligibility requirements for cancellation of removal. He, however, does not raise a constitutional claim or question of law and we have jurisdiction to consider Ramdane's cancellation-of-removal claim only if he takes issue with a non-discretionary decision that underlies the BIA's denial of his application for cancellation of removal.

Ramdane argues that the determination of whether he was subjected to extreme cruelty is a non-discretionary decision that underlies the discretionary decision to deny his petition for cancellation of removal. This Circuit has not squarely addressed whether extreme cruelty is a discretionary decision. However, the Fifth, Ninth and Tenth Circuits have. *See Wilmore v. Gonzales*, 455 F.3d 524, 528 (5th Cir. 2006) (extreme cruelty determination is discretionary); *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982 (10th Cir. 2005) (extreme cruelty determination is discretionary); *Hernandez v. Ashcroft*, 345 F.3d 824, 835 (9th Cir. 2003) (extreme cruelty determination is nondiscretionary).

We have found that extreme hardship is a discretionary decision not subject to review. *See Valenzuela Alcantar v. I.N.S.*, 309 F.3d 946, 949 (6th Cir. 2002). We have been given no reason to believe that extreme cruelty is treated differently than extreme hardship.

## II. BACKGROUND

### A. Factual Background

Ramdane was born on January 21, 1964, in Tomboctou, Mali and is a native and citizen of Mali. In his initial asylum petition, he alleges that he is a member of the Touareg tribe. He also alleges that the Malian army killed his brother and father, a tribal chief, and imprisoned him and another brother. In prison for nine years, Ramdane claims that he was beaten and tortured and that

his brother died as a result of mistreatment.

Ramdane was temporarily released for medical treatment upon payment of a bribe by a friend of Ramdane's father. After his release, Ramdane fled Mali and, on March 2, 2000, entered the United States as a B-1 nonimmigrant. On April 3, 2000, Ramdane submitted an application for asylum.

In early 2003 while his asylum application was still pending, Ramdane met Bernadette Ford ("Ford"), a United States citizen. Ramdane and Ford married on April 9, 2003, in Illinois.

Ramdane identifies several incidents in an effort to show that he was subjected to extreme cruelty by Ford following their marriage. First, when Ramdane and Ford went to Louisville to reside, Ford told Ramdane that her car was too small for her and her children and that she needed a bigger car. Ramdane then purchased a bigger car for the new family.

Then, after two weeks of marriage, Ford asked Ramdane to pay the rent. Ramdane replied that he was willing to pay half of the rent since both he and Ford were working. This discussion upset Ford. Not long thereafter, Ford went to Illinois to visit her mother. During this visit, a friend of Ford called Ramdane with a message from Ford stating that if he did not pay the whole rent, Ford would send Ramdane back to his country.

On one occasion, Ford came into their room at 3:00 a.m. and took Ramdane's keys. When Ramdane needed his keys to leave for work, Ford told him that she was not going to give him the keys to the house anymore. Ramdane then went to work and when he returned home, Ford asked him to leave. Ramdane went to a friend's apartment but Ford soon called and asked Ramdane to come home.

On November 26, 2003, while preparing to submit an adjustment application based upon his

-4-

marriage to Ford, Ramdane discovered that he is HIV-positive. Ramdane believes that Ford infected him with HIV because doctors told him that he has an American and not an African HIV strain.

After one week of marriage, Ramdane and Ford found out that Ford was pregnant. On January 16, 2004, a son was born. The son's name is Arym Calvin Muhammad Ramdane.

Against Ford's wishes, Ramdane went to the hospital for the birth of their son. He left work for three days to be with Ford and their son. On the fourth day, Ramdane went to work and when he returned home, the locks had been changed.

Ramdane needed to change his clothes. When he went to their home, Ford called the police and told them that a man was trying to get into her house. When the police arrived, they learned that Ramdane actually lived in the house and they helped him get his things. Ramdane then stayed with a friend for a while.

Ramdane says that, for the next approximately two years, Ford dominated him and abused him by calling him racist names, by threatening to have her friends harm him, by maintaining all of the power and control in the relationship and by kicking him out of the house and then asking him to return. Ramdane and Ford divorced on February 1, 2005.

Ramdane and Ford were awarded joint custody of their son. However, Ford has attempted to keep Ramdane from visiting with their son on several occasions. On May 29, 2005, Ramdane planned to pick up their son in accordance with the visitation schedule. Before Ramdane arrived, Ford called and asked him to bring milk, diapers, bananas and water. Ramdane brought everything asked. When he arrived at the house, Ramdane told Ford that it was not his duty to bring all of these items since he had already been ordered to pay child support. Ford became angry and told Ramdane that he could not take their son. Ramdane was still holding their son when Ford slammed the door,

hitting their son's face and jerking his head back to hit Ramdane's lip. Ford then opened the door, their son went inside and Ramdane left.

Ramdane returned again on May 31, 2005, to pick up his son for visitation and to deliver a child support payment. Ford refused visitation. Ramdane then reminded Ford that he had a lawyer. Ford then stated that she had "friends, basically a gang, who will kill you." Ramdane called a near-by friend to be a witness. When Ramdane again rang the doorbell, Ford would not open the door. Ramdane then called the police who asked Ford why she would not allow Ramdane to visit their son. Ford responded that Ramdane did not have a car seat. Ramdane then showed the police his car seat.

According to Ramdane, Ford verbally abused him throughout their marriage. She repeatedly reminded him that he was a "foreigner" and she could tell immigration that he was not a good man or call immigration and tell them to send him back to Africa.

**B. Procedural Background**

Ramdane filed an application for asylum with the former Immigration and Naturalization Service[1] ("INS") on March 24, 2000. On November 18, 2003, the Department of Homeland Security ("DHS") initiated removal proceedings against Ramdane by referring his case to an immigration judge for a hearing regarding asylum and related remedies and by issuing a Notice To Appear citing violations of 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for a time longer than permitted.[2] During a master calendar hearing on February 5, 2004, Ramdane, through counsel,

---

[1]On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to three agencies in the newly formed DHS. However, the Office for Immigration Review, which includes the immigration courts and Board remains an agency within the Department of Justice under the direction of the Attorney General.

[2]An alien who is not in immigration proceedings may file an asylum application with the DHS, or formerly INS. If DHS, after adjudication by an asylum officer in a non-adversarial

-6-

admitted the factual allegations in the Notice To Appear and conceded removability.

On January 23, 2006, Ramdane filed an amended asylum application. Therein Ramdane indicates that he is HIV positive. He argues that his HIV status places him in a particular social group of HIV positive individuals in Mali who face discrimination and ostracism. He claims that he will not be able to obtain employment if employers know of his HIV positive status. Ramdane then claims that, without employment, he would be unable to pay for necessary medical treatment and that he would be shunned and ostracized. He also expresses a fear of being attacked by those fearful of the disease. Finally, he alleges that the Mali government would fail to take action to prevent harm to him.

Ramdane also filed an application for cancellation of removal on January 23, 2006. Therein, he claims that he has been battered or subjected to extreme cruelty by Ford.

The Immigration Judge ("IJ") conducted a merit hearing on February 6, 2006, in which Ramdane's application for asylum and withholding of removal were adjudicated. Ramdane sought withholding of removal under the INA, withholding of removal under the regulations implementing the Convention Against Torture and "special rule" cancellation of removal under 8 U.S.C. § 1229b(b)(2).[3]

On March 14, 2006, the IJ issued an oral decision denying Ramdane's applications and

interview, declines to grant asylum, the case is referred to the Executive Office for Immigration Review within the Department of Justice.

[3]In 1994, Congress enacted the Violence Against Women Act of 1994 ("VAWA"). In the VAWA, Congress provided new forms of immigration relief for aliens who were trapped in abusive situations in their homes. A provision creating a special suspension of deportation category was included. When Congress repealed the suspension of deportation statute and enacted the cancellation of removal statute, it retained this "special rule" relief for aliens subjected to battering or extreme cruelty.

ordering him removed to Mali. The IJ finds that Ramdane is not credible due, in part, to inconsistent and vague testimony regarding the timing of the rebellion and his actual tribal affiliation. The IJ also finds that Ramdane has established that he is HIV positive but that Ramdane fails to establish that he could not receive medical treatment in Mali. Regarding the HIV-related evidence provided by Ramdane, the IJ finds that most of it was from "HIV activist groups" with little or no support from general literature or government reports.

The IJ does not accept the argument that Ramdane could not get a job in Mali since Ramdane claimed to be the son of a tribal chief. The IJ finds that the discrimination and problems described by Ramdane in Mali do not rise to the level of persecution because Ramdane would not "suffer such a low standard of medical care as to… suffer deprivation of his life or freedom, or his utter ability to earn a living."

Regarding Ramdane's application for cancellation of removal as a battered spouse, the IJ finds that Ramdane was never battered and that his application is "disingenuous to the verge of being fraudulent." Agreeing with the DHS decision to deny Ramdane's I-360 self-petition, the IJ concludes that Congress never intended to admit every immigrant involved in a difficult divorce.

The IJ also holds that Ramdane did not suffer extreme cruelty within the meaning of the law. The IJ does, however, recognize that Ramdane met the requirements for continuous physical presence and arguably for extreme hardship. With respect to the remaining factors, the IJ finds that Ramdane failed to establish good moral character as a result of his dishonesty and disingenuous testimony in immigration court and determines that Ramdane is inadmissible to the United States because he has a deadly communicable disease. The IJ finds that Ramdane's application for removal was a "grasp at any straw" to remain in the United States.

Finally, the IJ denies Ramdane's request for voluntary departure basing this decision on Ramdane's "false or misleading testimony" and the IJ's conclusion that Ramdane did not establish good moral character. In sum, the IJ denies all requested relief and orders that Ramdane be removed to Mali.

Ramdane appealed this order to the BIA on March 31, 2006. On appeal, Ramdane abandoned his claim for asylum on the basis of political opinion and his request for voluntary departure. He did, however, appeal the IJ's decision regarding his claim for asylum based upon his HIV status and on his application for special rule cancellation of removal.

On July 27, 2007, the Board dismissed Ramdane's appeal. The Board finds that Ramdane fails to establish a well-founded fear of persecution because he fails to establish that he would be denied medical care. The Board observes that the United States Department of State Country Reports identifies no discrimination against anyone based upon HIV status in Mali. The Board concludes that there is "no reasonable possibility of harm." In addition, the Board finds no clear error in the IJ's determination regarding cancellation of removal because Ramdane fails to establish that he was battered or that Ford treated him with extreme cruelty.

In sum, the Board denies Ramdane's request for asylum and related remedies and his application for cancellation of removal and dismisses Ramdane's appeal. This timely petition for review followed.

### III. STANDARD OF REVIEW

Where the BIA reviewed the IJ's decision and issued its own separate opinion, the Court reviews the BIA's opinion as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). Where, as here, the BIA made additional comments regarding Ramdane's

appeal, we will directly review the decision of the IJ while considering the additional comments of the BIA. *See Patel v. Mukasey*, No. 07-3865, 2008 WL 2482458 at * 1 (6th Cir. June 19, 2008)

While questions of law are normally reviewed de novo, substantial deference is granted to the BIA's interpretation of the INA and accompanying regulations. *Morgan*, 507 F.3d at 1057 (citing *Sad v. INS*, 246 F.3d 811, 814 (6th Cir. 2001)). The BIA's interpretation of the INA and accompanying regulations will be upheld unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.*

A defferential standard is applied to findings of fact. *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). We cannot reverse the IJ's or the BIA's determinations simply because we would have decided the matter differently. *Id.* To reverse the IJ's or the BIA's factual decisions, we must find that the evidence not only supports a contrary conclusion but indeed compels a contrary conclusion. *Almutaseb. v Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (citing *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004)). Finally, an applicant for asylum and related remedies or benefits under the INA bears the burden of proof. 8 U.S.C. §§ 1158(b)(1)(B), 1229a(c)(4) and 1231(b)(3)(C).

## IV. ANALYSIS

### A. Petition for Asylum

To receive asylum, Ramdane must establish that he is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(a). 8 U.S.C. § 1158 (b)((1)(B)(i). A refugee is a person who is outside their country of nationality and who is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42). Ramdane argues that the Board erred in upholding the IJ's denial of his application for asylum because severe and pervasive

discrimination and lack of access to life sustaining HIV treatment and essential medical care constitute persecution.

The fear of persecution must be both subjectively genuine and objectively reasonable. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). Regarding objective reasonableness, the applicant must present evidence establishing an "objective situation" under which his fear can be deemed reasonable. *Id.* (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)).

The INA provides no definition of persecution. *Mikhailevitch*, 146 F.3d at 389. Courts have agreed that persecution includes punishment or the infliction of suffering or harm. *Id.* (citing *Bradvica v. INS*, 128 F.3d 1009, 1012 (7th Cir. 1997)). "Those same courts have held that harassment or discrimination without more does not rise to the level of persecution." *Id.* Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.*

In this case, Ramdane is a citizen of Mali who claims asylum because he has a fear of persecution in Mali on account of membership in a particular social group. The social group identified by Ramdane is those who are HIV-positive. The persecution identified by Ramdane is that he will suffer severe and pervasive discrimination. The discrimination identified is that Ramdane will be unable to find employment and will be unable to obtain antiretroviral treatment and other HIV-related medical care in Mali.

We must determine whether the BIA correctly determined that Ramdane failed to establish eligibility for asylum. The BIA's determination must be upheld if it is supported by reasonable, substantial and probative evidence on the record considered as a whole. We may, however, reverse

the BIA if the evidence presented by Ramdane not only supports a contrary conclusion, but indeed compels a contrary conclusion.

The BIA found that, while the evidence submitted by Ramdane indicates that those infected with HIV encounter various hardships in Mali, the evidence does not support a finding that members of this particular social group have a well-founded fear of persecution. The BIA also found that, as noted by the IJ, the evidence does not establish that Ramdane would be denied medical care in Mali. The BIA adds that the State Department's 2003 Country Reports on Human Rights Practices for Mali do not reflect any type of discrimination or persecution of those infected with HIV.

Ramdane first argues that immigration judges have held that HIV-positive individuals who are unable to access sufficient health care if removed to their home countries and/or who are unable to find employment as a result of their HIV-positive diagnosis suffer persecution. This, of course, is a general statement and not specific to Ramdane's situation.

Ramdane next argues that he will be unable to obtain employment in Mali because he is HIV-positive and the IJ and the BIA failed to take into consideration the "severe discrimination and ostracism" that he would suffer in Mali.[4] In support, Ramdane cites what he calls credible reports from Mali indicating that employment discrimination against HIV-positive individuals is the prevailing social norm. However, the IJ and the BIA reached a different conclusion based upon the evidence before them.

The IJ found that the reports cited by Ramdane come mostly from HIV activist groups, and

_____

[4]Ramdane's arguments and the IJ's findings must be understood in light of the fact that the IJ did not find Ramdane to be credible due, in part, to discrepancies between Ramdane's testimony at the hearing and his testimony before the asylum officer. The IJ also found that Ramdane's application for withholding of removal, to the extent that it relies upon Ramdane being a battered spouse was "disingenuous to the verge of being fraudulent."

-12-

the reports of discrimination do not seem to be in the general literature of the State Department or recognized groups such as Amnesty International. The IJ also found that, since Ramdane comes from the tribal leadership in his tribe, he would not need to find an employer for a job. In sum, the IJ found that any discrimination or problems that Ramdane would have would not constitute persecution under the INA. The BIA added that the State Department's 2003 Country Reports on Human Rights Practices for Mali do not show any persecution or discrimination in Mali due to being HIV-positive.

Ramdane next argues that he will not likely have adequate access to antiretroviral treatment or necessary medical care in Mali. In support, Ramdane says that the IJ erroneously relied upon a report indicating that in February of 2005, the President of Mali announced a new program that would provide free antiretroviral medication for every citizen with HIV/AIDS. The IJ's reliance was erroneous, according to Ramdane, because the program announced was merely an unfunded proposal. Ramdane also says that the Board failed to consider country reports which indicate that Ramdane will likely not have access to HIV-treatment and other necessary medical care in Mali.

The IJ does not mention the report referred to by Ramdane but does indicate that, although Ramdane would suffer some hardships going to Mali, there is no evidence that Ramdane would not be able to obtain necessary medical treatment for HIV and that he would receive necessary medical treatment. On this issue, the IJ found that Ramdane's counsel was "reduced to pointing to things in reports like 'the government provides free medical care, but it does not provide transportation to the doctor' as a ground to show that medical care would not be available." In sum, the IJ determined, based upon the evidence before him, that, although medical care is better in the United States than it would be in Mali, he could not find that Ramdane would suffer such a low standard of medical

care in Mali that he would suffer deprivation of his life or freedom. Finally, as indicated above, the BIA found that the evidence of record does not establish a reasonable possibility of harm in Mali on account of Ramdane's HIV-positive status.

In sum, the IJ and the BIA correctly determined that Ramdane failed to establish eligibility for asylum. The IJ's and BIA's determinations are supported by reasonable, substantial and probative evidence and the evidence presented by Ramdane does not compel a contrary conclusion. The BIA's dismissal of the appeal of Ramdane's petition for asylum is affirmed.

## B. Petition for Cancellation of Removal

Ramdane argues that the BIA erred in upholding the IJ's denial of his application for cancellation of removal because he established that he met all of the eligibility requirements. However, as set forth above, we have been given no reason to believe that a decision regarding extreme cruelty is any different from a decision regarding extreme hardship, which is a discretionary decision and we do not have jurisdiction to review a discretionary decision. However, even if we did have jurisdiction to review the IJ's decision, Ramdane would still not be eligible for cancellation of removal.

To qualify for cancellation of removal as a battered spouse, Ramdane must have satisfied all five of the eligibility requirements. 8 U.S.C. § 1229b(b)(2)(A). Yet, he did not satisfy at least two of these requirements.

The first eligibility requirement that Ramdane did not satisfy is that he was subjected to extreme cruelty by a spouse who is or was a U.S. citizen. 8 U.S.C. § 1229b(b)(2)(A)(i)(I). Ramdane testified that his former spouse was physically and verbally abusive, changed the locks on the doors of their house while he was at work and threatened to have him deported.

Based upon the evidence before him, the IJ found that Ramdane was not subjected to extreme cruelty. The IJ found it "preposterous" that Ramdane would claim that he was in fear of Ford, who was not much over 5 feet tall, because Ramdane is tall, powerfully built and is from one of the "historically toughest tribes in the world." The IJ also found that, "if suffering from degrading language, being cursed at, being kicked out of the house, having difficulties seeing the child, and various threats which never have any substance constitutes battering, then virtually every person who is party to a difficult divorce is a battered spouse" and that clearly is not the intention of Congress in enacting the Violence Against Women Act.

In sum, the IJ found that Ramdane's discussion of his unfortunate marriage "does not constitute extreme cruelty within the meaning of the law." The BIA affirmed the IJ's decision regarding extreme cruelty.

The evidence does not compel a contrary conclusion. Therefore, Ramdane has not satisfied this eligibility requirement.

The other eligibility requirement that Ramdane does not satisfy is the requirement that he has been a person of good moral character. 8 U.S.C. § 1119b(b)(2)(A)(iii). The IJ determined that Ramdane does not have good moral character, a discretionary finding. The BIA did not discuss this finding because this finding was not appealed by Ramdane.

Ramdane argues in his appeal that the IJ and the BIA erroneously relied upon speculation and conjecture to conclude that Ramdane has not been a person of good moral character and did not consider any countervailing positive factors. He also argues that the IJ failed to take into consideration the verbal and emotional abuse and physical threats he suffered. Ramdane calls the IJ's conclusions regarding moral character "summary, unfounded and biased."

The IJ found many reasons to doubt Ramdane's credibility. According to the IJ, Ramdane provided inconsistent and vague testimony regarding the timing of the rebellion and the events surrounding the rebellion and his actual tribal affiliation. The IJ also determined that Ramdane's statement that he was physically afraid of his wife was "almost certainly a lie." The IJ concluded that, "[t]he dishonesty and disingenuousness of [Ramdane's] testimony in court today indicates to the Court that he is not a person of good moral character."

Decisions regarding moral character are discretionary and, thus, not reviewable. *Mateo v. Gonzales*, 217 F. App'x 476, 481 (6th Cir. 2007) (findings of moral character are discretionary); *Ramadan v. Gonzales*, 479 F.3d 646, 656 (9th Cir. 2007) (determinations that are subjective or dependent upon the identity of the person or entity examining the issue, such as whether an alien has good moral character, are discretionary).

Even if the IJ's decision regarding Ramdane's moral character were reviewable, the evidence presented by Ramdane would not compel a contrary conclusion. Therefore, even if this Court were to review the IJ's and the Board's decisions, Ramdane would not be eligible for cancellation of removal because he cannot satisfy at least two of the requirements.

## V. CONCLUSION

The IJ and the BIA correctly determined that Ramdane failed to establish eligibility for asylum. The IJ's and BIA's determinations regarding asylum are supported by reasonable, substantial and probative evidence and the evidence presented by Ramdane does not compel a contrary conclusion.

We have been given no reason to believe that we have jurisdiction to review the denial of Ramdane's application for cancellation of removal. However, if we did have jurisdiction to

-16-

review the denial of Ramdane's application for cancellation of removal, we would affirm the decisions of the IJ and the BIA on the merits.

For these reasons, we deny the petition for review and affirm the decisions of the Immigration Judge and Board of Immigration Appeals.